IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

MARY K. FREEMAN,

Plaintiff,

vs.

SKY DINE, LLC,

Defendant.

CV 25-79-BLG-SPW

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Sky Dine, LLC ("Sky Dine") filed a Motion for Summary Judgment (Doc. 26), contending that judgment should be entered in its favor on all four of Plaintiff Mary K. Freeman's causes of action. Sky Dine argues that Freeman's claims fail as a matter of law because they are untimely, Freeman failed to exhaust administrative remedies, and the record cannot establish a prima facie case of discrimination. (*See* Doc. 27). Freeman opposes the Motion. (Doc. 33). The Motion is fully briefed and ripe for the Court's review. (*See* Docs. 27, 33, 34).

For the reasons stated herein, the Court grants Sky Dine's Motion.

## I. Background

Sky Dine operates food service facilities, restaurants, bars, convenience stores, and gift shops at the Billings-Logan International Airport in Billings, Montana, and has done so since 2021. (Doc. 29-2 at 2–3). Freeman was hired in December 2022 as a server and bartender. (Doc. 1-1 at 4; Doc. 29-3 at 1). Sky Dine

hired Freeman to work across its various restaurant locations as operationally needed, though the majority of her initial shifts were assigned to the diner facility. (Doc. 29-4 at 5). At the time of hire, Freeman's general manager was Tracey Burns. (*Id.* at 7).

After her first week of employment, Freeman notified Burns of medical issues with her back that restricted her ability to work. (*Id.* at 11). Specifically, Freeman requested a maximum work schedule of two consecutive days on, followed by one day off, and shifts under eight hours whenever possible. (*Id.* at 11–12). Sky Dine accommodated all of these scheduling restrictions. (*Id.*). Freeman simultaneously maintained separate employment as a phlebotomist, and Sky Dine structured her weekly schedule to accommodate her secondary employment hours. (*Id.* at 12).

Beginning December 23, 2022—six days after her hire date—and continuing over the next several months, Freeman frequently notified management of late arrivals and absences, or failed to show up for scheduled shifts without advanced notice. (*See* Doc. 29-8 at 1–4). In early 2023, Freeman underwent surgery and took the majority of February 2023 off to recover. (Doc. 29-6 at 1). She returned to work on March 9, 2023, working approximately two to three days per week. (Doc. 29-7 at 21). From March through April 2023, Freeman arrived late or was absent from scheduled shifts multiple times. (*Id.* at 20–21; Doc. 29-8 at 5–6).

In early May 2023, Freeman voluntarily resigned from her position at Sky Dine after securing another job. (Doc. 29-2 at 6). On May 11, 2023, Freeman offered to return to Sky Dine to work two or three days per week across any of the restaurant locations, provided she was not scheduled for consecutive days, Sundays, or shifts exceeding eight hours. (Doc. 29-8 at 6). Burns accepted the terms and resumed assigning shifts to Freeman. (*Id.* at 6–7; Doc. 29-2 at 114).

Over the next six months, Freeman routinely rejected available shifts, failed to appear for shifts, and arrived late, as documented by text messages between Freeman and Burns from June 2023 through February 2024. (Doc. 29-8 at 10–16; Doc. 29-5 at 1–19).

In November 2023, additional hours became available following the departure of another Sky Dine bartender. (Doc. 29-2 at 7). On November 6, 2023, Freeman texted Burns to request those newly vacant hours, conditioning her availability on a maximum shift length of six hours and a two-days-on, one-day-off rotation. (Doc. 29-5 at 11). In response, Burns texted Freeman on November 20, 2023, and November 29, 2023, offering additional shifts. (*Id.* at 11–12).

On November 29, 2023, Freeman texted Burns to complain that she had not been allocated more of the available hours. (*Id.* at 13). In the text exchange, Freeman acknowledged that her lack of scheduling was due to her lack of seniority, her missed shifts from illness, and her failure to review the updated schedule. (*Id.*).

Burns responded that Freeman had not provided updated availability and that management believed Freeman was still prioritizing her phlebotomy job. (*Id.*). Freeman confirmed that she was now available to work back-to-back, consecutive daily shifts. (*Id.* at 14).

In December 2023, Sky Dine issued Freeman three separate written disciplinary warnings for tardiness, failing to call or show up for shifts, failing to check in with managers, failing to sweep/mop after shifts, and failing to report till amounts at closing. (Doc. 29-9 at 1–3). Freeman signed and acknowledged each written warning. (*Id.*).

On December 20, 2023, Sky Dine management held a meeting with Freeman. (Doc. 29-10 at 1; Doc. 28 at 8–9). Management presented Freeman with an extensive written list detailing various operational infractions, policy violations, corporate standard failures, and Yellowstone County Health Department violations. (Doc. 29-10 at 1). Freeman signed the document to acknowledge receipt and review. (*Id.*).

Throughout early 2024, Freeman continued to be late and miss scheduled shifts. (*See* Doc. 29-5 at 16–18). On February 9, 2024, Sky Dine management requested that Freeman work a shift in the airport café facility. (Doc. 29-12 at 10). Freeman refused, responding, "I don't make coffee." (*Id.*). Sky Dine then terminated Freeman's employment "for constant tardiness, frequent absenteeism,

violations of company policies, unreliability and refusal to take accountability for her performance." (Doc. 29-2 at 9).

On July 8, 2024, Freeman filed an administrative discrimination charge with the Montana Human Rights Bureau ("MHRB") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging age discrimination and retaliation. (Doc. 29-1 at 1–2). The MHRB conducted an investigation, interviewed witnesses, and collected documentation from both parties. (Doc. 29-12 at 1). On December 30, 2024, the MHRB issued its final investigative report, finding no reasonable cause to support claims of discrimination. (*Id.*). The MHRB concluded that Freeman was "unable to prove by a preponderance of the evidence that Sky Dine's proffered reasons for terminating her employment are pretext for discrimination on the basis of age." (*Id.* at 11).

On December 30, 2024, the MHRB issued its closure notice, instructing Freeman that she had 90 days to commence proceedings in district court; until January 13, 2025, to object to the MHRB's findings; and 15 days to request an EEOC review. (Doc. 29-15 at 1–3). Freeman requested an EEOC administrative review but did not take other action. On February 3, 2025, the EEOC adopted the findings of the MHRB and issued a dismissal and notice of rights, notifying Freeman of her right to file a lawsuit within 90 days of receipt. (Doc. 29-16 at 1).

On May 19, 2025, Freeman filed her Complaint in this action. (Doc. 1-1). She seeks back pay, lost wages, lost benefits, compensatory damages for emotional distress, punitive damages, attorney's fees, and an order of reinstatement or front pay in lieu of reinstatement. (*Id.* at 6).

## II. Legal Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making a summary judgment determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Id.* at 587.

Because pro se plaintiffs do not have the benefit of legal counsel, their legal pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, "*pro se* litigants in the ordinary civil case should not be treated

more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). Thus, pro se litigants must follow the same rules of procedure as litigants who are represented by counsel. *United States v. Merrill*, 746 F.2d 458, 465 (9th Cir. 1984), *overruled on other grounds by, Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (en banc). A plaintiff's burden of proof and the required elements of their claims are not relaxed simply because they are appearing pro se; they "must [still] comply strictly with the summary judgment rules." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

## III. Discussion

Freeman's Complaint asserts four causes of action: gender discrimination, wrongful termination, age discrimination, and retaliation. (Doc. 1-1 at 5–6). Reviewing each claim in turn, the Court grants summary judgment in Sky Dine's favor on all counts.

### *A. Gender Discrimination*

First, Freeman alleges gender discrimination under both the Montana Human Rights Act ("MHRA") and Title VII. (*Id.* at 5). The Court concludes that both claims are barred because Freeman failed to exhaust her administrative remedies before the MHRB and the EEOC.

*1. Montana Law*

The MHRA provides the exclusive remedy for discriminatory practices under state law. Mont. Code Ann. § 49-2-512(1) (2025). Thus, a plaintiff must exhaust all administrative procedures before filing a discrimination lawsuit in district court. *Borges v. Missoula Cnty. Sheriff's Off.*, 415 P.3d 976, 981 (Mont. 2018) (citing Mont. Code Ann. § 49-2-512(1)). Under this statutory framework, a district court is constrained to entertain only those claims that the MHRB has already investigated and adjudicated. *Id.* at 982.

Here, Freeman failed to file or pursue a gender discrimination complaint against Sky Dine with the MHRB. (Docs. 29-1, 29-12). Because Freeman failed to exhaust the exclusive administrative remedies mandated by the MHRA, the Court lacks jurisdiction to hear the claim. *See Stricker v. Blaine County*, 538 P.3d 394, 400 (Mont. 2023). Accordingly, the Court grants summary judgment in Sky Dine's favor on Freeman's state gender discrimination claim.

*2. Federal Law*

Generally, a plaintiff must exhaust administrative remedies by filing a timely charge with the EEOC before pursuing a Title VII claim in federal district court. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). While Title VII's charge-filing requirement is not jurisdictional, it is a mandatory claim-processing rule that a court must enforce if properly raised by a defendant. *Fort*

*Bend County v. Davis*, 587 U.S. 541, 550–51 (2019). The permissible scope of a plaintiff's subsequent civil action "depends upon the scope of both the EEOC charge and the EEOC investigation." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). Accordingly, judicial review extends only to allegations that fell within the scope of the actual administrative investigation or that "could reasonably be expected to grow out of that charge." *Vasquez*, 349 F.3d at 644.

To streamline this process, authorized state Fair Employment Practices Agencies ("FEPAs") routinely enter into worksharing agreements with the EEOC, rendering a filing with one agency a constructive filing with the other. *Fort Bend County*, 587 U.S. at 544; *see also Fair Employment Practices Agencies (FEPAs) and Dual Filing*, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/fair-employment-practices-agencies-fepas-and-dual-filing [https://perma.cc/3ND6-8FY4] (last visited Oct. 5, 2026). The MHRB is formally designated as Montana's contract FEPA and maintains an active worksharing agreement with the EEOC. *See Rhoten v. Rocking J. Ranch, LLC*, No. CV 21-46-M, 2022 WL 4482852, at *1 (D. Mont. Sept. 27, 2022); *State, Local and Tribal Programs*, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/field-office/seattle/fepa [https://perma.cc/JE6B-QAWU] (last visited Oct. 5, 2026); *Workforce Discrimination Resources by State*, U.S. Dep't of Labor, https://www.dol.gov/agencies/faith/workforce-discrimination-resources-by-

state#MT [https://perma.cc/U452-3LWT] (last visited Oct. 5, 2026). If a contract FEPA issues a final determination, the charging party may request that the EEOC conduct a "substantial weight review" of those local findings. *Fair Employment Practice Agencies*, *supra*.

Here, Freeman's administrative charge, received by the MHRB on July 1, 2024, requested dual relief from both the MHRB and the EEOC. (Doc. 29-1 at 2). By operation of the worksharing agreement, Freeman requested that the EEOC review the MHRB's findings. However, the MHRB's investigative scope was confined strictly to determining whether reasonable cause supported her claims of age discrimination and retaliation. The EEOC adopted those exact findings without expanding the boundaries of the administrative inquiry.

Although Freeman successfully dual-filed her paperwork, gender discrimination was entirely absent from her initial charge, the MHRB's investigative scope, the final investigative report, and the subsequent dismissal and notice of rights. Because Freeman failed to raise or exhaust a gender discrimination claim during the administrative process, and because such a claim cannot reasonably be expected to grow out of an investigation into age and retaliation, she has failed to satisfy Title VII's mandatory charge-filing requirements. Accordingly, the Court grants summary judgment in Sky Dine's favor as to Freeman's federal gender discrimination claim.

*B. Wrongful Termination*

In Count IV, Freeman alleges wrongful termination in violation of the Montana Wrongful Discharge from Employment Act ("WDEA") and public policy. (Doc. 1-1 at 6). Under the WDEA, a claim must be filed within one year after the date of discharge. Mont. Code Ann. § 39-2-911.

Here, it is undisputed that Sky Dine terminated Freeman on February 9, 2024. However, Freeman did not file her WDEA claim until May 2025—15 months after her cause of action accrued. Because Freeman failed to file her claim within the mandatory one-year statute of limitations, her claim is time-barred as a matter of law. Accordingly, the Court grants summary judgment in Sky Dine's favor on Count IV.

*C. Age Discrimination and Retaliation Under Montana Law*

In Count I, Freeman alleges Sky Dine discriminated against her based on age in violation of Montana Code Annotated § 49-2-303. (Doc. 1-1 at 5). In Count III, Freeman alleges Sky Dine retaliated against her in violation of Montana Code Annotated § 49-2-301. (*Id.* at 6).

Freeman's charge of discrimination filed with the MHRB alleged aged discrimination and retaliation. (Doc. 29-1 at 1). Upon the MHRB's finding of "no reasonable cause to believe unlawful discrimination" or retaliation had occurred, the MHRB investigator issued a closure notice and right-to-sue letter to Freeman. (Doc.

29-12 at 1; Doc. 29-15). This letter expressly advised Freeman that any state or federal lawsuit had to be filed within 90 days of the issuance of the notice, stating in relevant part:

> With a notice of dismissal, a charging party may continue the administrative process by filing an objection to the dismissal with the Montana Human Rights Commission within 14 days after the issuance of this dismissal or a charging party may discontinue the administrative process and commence proceedings in the district court within 90 days after the issuance of this dismissal.

(Doc. 29-15 at 1).

The 90-day period following the December 30, 2024 notice expired on Sunday, March 30, 2025. Because the deadline fell on a weekend, Freeman had until the following Monday, March 31, 2025, to file her state age discrimination and retaliation claims. *See* Fed. R. Civ. P. 6(a)(1)(C) ("[I]f the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

Freeman filed the Complaint on May 19, 2025—49 days after the statutory deadline. Thus, Count III (retaliation) and the state-law component of Count I (age discrimination) are time-barred. The Court therefore grants summary judgment in Sky Dine's favor as to Count III and the state-law component of Count I.

///

///

///

*D. Age Discrimination Under Federal Law*

In addition to alleging state-law age discrimination, Freeman's Count I alleges age discrimination under the Age Discrimination in Employment Act ("ADEA"). The Court addresses the timeliness and merits of this claim in turn.

*1. Timeliness*

After the MHRB's decision on December 30, 2024, Freeman had 15 days to request that the EEOC review the MHRB's decision under the ADEA. (Doc. 29-15 at 1). The EEOC reviewed Freeman's charge and adopted the MHRB's findings in its Final Investigative Report, ultimately issuing a dismissal and notice of rights on February 3, 2025. (Doc. 29-16 at 1). The notice explicitly states that any federal or state lawsuit must be filed within 90 days of receipt. (*Id.*).

Freeman contends that her May 19, 2025 Complaint is timely because she did not receive the notice until February 18, 2025. (Doc. 33 at 2). To support this timeline, she submits the mailing envelope, which bears a postmark date of February 12, 2025. (Doc. 33-1 at 4). Conversely, Sky Dine argues that the federal age discrimination claim is time-barred under the Ninth Circuit's three-day mailing presumption. (Doc. 27 at 19). Specifically, Sky Dine maintains that Freeman provides "no reasonable explanation"—such as "a tracking receipt, an affidavit from a third-party, or a delivery confirmation"—to prove the notice took 12 days to travel

from Oakland, California, to Billings, Montana, and overcome the standard legal presumption of receipt. (Doc. 34 at 5–6).

In the Ninth Circuit, when the actual date of receipt is undocumented, courts apply a rebuttable presumption that a right-to-sue notice arrives three days after mailing. *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1124 (9th Cir. 2007). This presumption mirrors Federal Rule of Civil Procedure 6(d). ("When a party may or must act within a specified time after service is made under Rule 5(b)(2)(C) (mail), . . . 3 days are added after the period would otherwise expire under Rule 6(a)."). To rebut it, a plaintiff cannot merely cite general mail delays. *Payan*, 495 F.3d at 1126. A plaintiff must "show that she did not receive the EEOC's right-to-sue letter in the ordinary course" by presenting evidence such as "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail." *Id.* Moreover, any proffered delay "must be in no way a complainant's fault." *Id.* (citation modified) (quoting *Kerr v. McDonald's Corp.*, 427 F.3d 947, 952 (11th Cir. 2005)).

Under Rule 6, time computations exclude the day of the triggering event but include the final day. Fed. R. Civ. P. 6(a)(1)(A), (C). However, if the final day falls on a Saturday, Sunday, or legal holiday, the period rolls over to the next business day. *Id.* 6(a)(1)(C). Though the text of Rule 6 explicitly includes Saturdays, the

Ninth Circuit's application of the mailing period has at times been less specific. In *Dandino, Inc. v. U.S. Department of Transportation*, an administrative law case involving an appeal from the Federal Motor Carrier Safety Administration, the Ninth Circuit noted that "if the last day of the [three-day mailing] period is a Sunday or legal holiday, the period continues to run until the end of the next day that is not a Sunday or legal holiday." 729 F.3d 917, 922 n.4 (9th Cir. 2013).

District courts within the Ninth Circuit have varied in their approach to applying the three-day mailing window when it lands on a Saturday. In *Lintz v. Potter*, the Eastern District of California calculated the 90-day filing clock strictly from a Saturday presumed-receipt date, rather than rolling the mailing window to Monday. No. 09-cv-01907, 2012 WL 2995674, at *9 (E.D. Cal. July 23, 2012). However, in *Theodule v. Blue Mercury*, the Northern District of California applied Rule 6(a)(1)(C) to the mailing period itself, ruling that when the third day falls on a Saturday, the "the presumed receipt date" rolls to the following Monday. No. 17-cv-05581, 2018 WL 4110555, at *3 n.2 (N.D. Cal. Aug. 29, 2018).

The Court adopts the flexible approach articulated in *Theodule*. Because *Payan* explicitly notes that the three-day presumption "accords with Federal Rule of Civil Procedure 6[d]," it is logically consistent to apply Rule 6's weekend-extension rules to the mailing period itself. *See Payan*, 495 F.3d at 1125. Moreover, because *Dandino* omitted "Saturday" from its specific ruling, lower courts are left with an

ambiguity. In the context of remedial civil rights statutes like the ADEA, which are traditionally construed liberally, the Court elects to resolve this ambiguity in favor of preserving the claim on its merits rather than dismissing it on a technicality. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 765–66 (1979) (Blackmun, J., concurring).

Standing alone, the EEOC notice dated February 3, 2025, would carry a presumed mailing date of February 3 and a presumed receipt date of February 6, 2025. Freeman's handwritten notation of "02/18/2025" on the notice is insufficient on its own to alter this timeline.

However, Freeman successfully rebutted the February 3 mailing date by producing the original envelope, which bears an official postmark of February 12, 2025. Courts routinely presume the postmark date represents the actual date of mailing. *See, e.g.*, *Appleby v. Butler*, No. C 03-4203, 2004 WL 502310, at *1 n.1 (N.D. Cal. Mar. 9, 2004); *Tseng v. Comm'r of Int. Rev. Serv.*, No. 90-70572, 1992 WL 21636, at *1 (9th Cir. Feb. 10, 1992).

Using the February 12, 2025 postmark as the date of mailing, the three-day mailing period ends on Saturday, February 15, 2025. Because the third day after mailing was a Saturday, followed by a Sunday and a federal holiday, the three-day presumption automatically rolls over to Tuesday, February 18, 2025.

Freeman filed her Complaint on Monday, May 19, 2025. Because May 19 is precisely 90 days after her presumed receipt date of February 18, her Complaint is timely. The Court declines to grant summary judgment in Sky Dine's favor on the grounds that Freeman's claim is time-barred and proceeds to the merits of her federal age discrimination claim.

2. *Merits*

The ADEA makes it unlawful for an employer to "discharge any individual [who is at least 40 years old] or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631. At summary judgment, the Ninth Circuit reviews ADEA claims using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Diaz v. Eagle Produce, Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). "Under this framework, the employee must first establish a prima facie case of age discrimination." *Id.* If the employee establishes a prima facie case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action." *Id.* If the employer satisfies this burden, "the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination." *Id.*

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must demonstrate that she was "(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Id.* (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). The fourth element is flexible, requiring only that the employee "show through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996).

Neither party disputes that Freeman was over the age of 40 at the time Sky Dine discharged her. (*See* Doc. 27 at 26). Thus, the first and third elements of the prima facie case are satisfied.

Sky Dine argues that Freeman cannot satisfy either the second or fourth elements of the prima facie case for age discrimination. (*Id.*). Because the Court concludes that Freeman was not performing her job in a satisfactory manner, the Court limits its analysis to the second element.

The record reflects that Freeman failed to perform her job satisfactorily. Pursuant to the employee handbook, Sky Dine explicitly emphasizes the importance of "attendance and punctuality," noting that "[u]nnecessary absences and lateness

are expensive, disruptive and place an unfair burden on fellow employees and Supervisors." (Doc. 29-13 at 34). Thus, Sky Dine "expect[s] excellent attendance from all employees," and warns that "[e]xcessive absenteeism or tardiness will result in disciplinary action up to and including discharge." (*Id.*). When "absences and tardiness cannot be avoided . . . , employees are expected to notify Supervisors as early as possible, but no later than the start of the work day." (*Id.*).

The undisputed evidence shows that Freeman repeatedly violated these attendance policies. The record demonstrates that Freeman failed to report to work and provided late notice on December 23, 2022, August 30, 2023, January 10, 2024, and January 31, 2024. (Doc. 29-8 at 1; Doc. 29-5 at 1, 16, 18; *see also* Doc. 28 at 4, 6, 9; Doc. 33 at 2–4). Furthermore, she completely missed scheduled shifts without calling ahead on April 27, 2023, October 9, 2023, October 11, 2023, December 8, 2023, and December 15, 2023. (Doc. 29-9 at 2; Doc. 29-8 at 6; Doc. 29-5 at 7; *see also* Doc. 28 at 4, 6, 8; Doc. 33 at 2–4). Texts messages and disciplinary warnings also demonstrate that Freeman arrived late January 19, 2023, May 12, 2023, June 19, 2023, August 23, 2023, September 1, 2023, September 18, 2023, and December 11, 2023. (Doc. 29-8 at 4, 7, 12; Doc. 29-5 at 1–2; Doc. 29-9 at 1; *see also* Doc. 28 at 4–6, 8; Doc. 33 at 2–4). Two formal disciplinary warnings issued to Freeman in December 2023 directly addressed this persistent tardiness and absenteeism. (Doc.

29-9 at 1–2). Yet, even after receiving those warnings, Freeman continued to miss shifts and arrive late. (*See, e.g.*, Doc. 29-5 at 16, 18; Doc. 28 at 9; Doc. 33 at 2–4).

Beyond attendance issues, Freeman failed to meet basic workplace performance standards. Sky Dine's employee handbook provides a non-exhaustive list of misconduct, including the "[v]iolation of safety rules and policies," the "[f]ailure to follow lawful instructions of supervisor," the "[f]ailure to perform assigned job duties," and other violations of the policies. (Doc. 29-13 at 33).

A written disciplinary warning on December 16, 2023—which Freeman signed and acknowledged—corroborates that she violated these expectations by failing to check out with the on-duty manager, failing to sweep or mop the bar area, and failing to report the till amount at the end of her shift. (Doc. 29-9 at 3). On December 20, 2023, Sky Dine held a formal performance meeting to inform Freeman of various policy infractions, operational standards violations, and local health code non-compliance. (Doc. 29-10 at 1; Doc. 28 at 8–9). Finally, on February 9, 2024, Freeman explicitly refused to perform her assigned duties, stating, "I don't make coffee," when directed to work in the café. (Doc. 29-12 at 10).

Freeman admitted these facts during her deposition and does not dispute them in her summary-judgment response. (*See* Docs. 29-4, 33). Instead, she offers several justifications for her performance issues, pointing to a severe winter storm, a COVID-19 diagnosis, and an alleged lack of access to the online scheduling portal.

(Doc. 33-1 at 18–19). Regarding the December 23, 2022 absence, Freeman asserts that a severe weather emergency was the sole cause of her unexcused absence, rather than a lack of reliability. (Doc. 33 at 2). She further accuses Burns of fabricating the three disciplinary write-ups within a five-day span and claims Sky Dine breached its own handbook by failing to provide her with online schedule access. (*Id.*). To explain her October 2023 absences, Freeman notes she was diagnosed with COVID-19 and claims she verbally informed Burns by phone on October 9 that she was "severely ill and bedridden." (Doc. 33-1 at 18–19).

These justifications are insufficient to create a genuine issue of material fact regarding Freeman's job performance at the time of her termination. She fails to rebut the evidence showing she consistently violated company policies and local health codes. The record indisputably demonstrates that Freeman regularly failed to report for work, was chronically late or absent, and failed to execute basic closing procedures. The isolated dates Freeman attempts to excuse by weather or illness do not alter the broader, undisputed reality of her tenure at Sky Dine. Because the undisputed material facts establish that Freeman was not performing her job satisfactorily when she was discharged, she cannot establish a prima facie case of age discrimination. Her ADEA claim therefore fails as a matter of law.

///

///

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Sky Dine, LLC's Motion for Summary Judgment (Doc. 26) is GRANTED. This matter is dismissed with prejudice. The Clerk of Court is directed to enter judgment in favor of Defendant Sky Dine, LLC and close the matter.

DATED this 6th day of October, 2026.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge